UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

JA'MICHAEL S. CARTER                           CIVIL ACTION NO. 19-0884

                                               SECTION P

VS.

                                               JUDGE TERRY A. DOUGHTY

MONROE POLICE DEPARTMENT, ET AL.               MAG. JUDGE KAREN L. HAYES

REPORT AND RECOMMENDATION

Plaintiff Ja'Michael Shawndarrious Carter, a prisoner at Ouachita Correctional Center ("OCC") proceeding pro se and in forma pauperis, filed the instant proceeding on July 10, 2019, under 42 U.S.C. § 1983.  He names the following defendants: Monroe Police Department, Officer Derek Daniel, Officer Smith, Sergeant Gilbert, Officer Epennet, Officer Vail, Detective Murphy, E.A. Conway Hospital, and OCC Medical.[1]  For reasons that follow, the Court should dismiss Plaintiff's claims.

Background

Plaintiff alleges that, on April 25, 2019, at Delta Mini Mart in Monroe, Louisiana, he was retrieving his bike from his uncle when officers—who stopped him the previous week—stopped him, claiming that they saw a hand-to-hand transaction between Plaintiff and his uncle.  [doc. # 1, p. 5].  Plaintiff claims, essentially, that the officers lacked reasonable suspicion to justify stopping him.  *Id.*

Officer Daniel placed Plaintiff in handcuffs while he attempted to identify Plaintiff.  *Id.* Officer Daniel began searching Plaintiff's clothes.  *Id.*  Plaintiff claims that Officer Daniel

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

reached into Plaintiff's underwear and touched his testicles, which disgusted Plaintiff and caused him to yell and "snatch" away from Officer Daniel's grip.  *Id.* at 5-6.  Plaintiff's reaction caused Officer Daniel's fingers to scratch the inside of Plaintiff's anus, making it bleed and hurt when Plaintiff later used the restroom.  [doc. # 9,  p. 1].  Plaintiff "didn't know if" Officer Daniel tried to scratch him.  *Id.*

Plaintiff took two steps back because Daniel's actions disgusted and scared him.  *Id.* at 2.  Then, Officer Smith choked Plaintiff.  [doc. # 1, pp. 5-6].  Plaintiff was not resisting, he followed orders, he did not attempt to evade arrest, and he did not pose an immediate threat to the safety of the officers or others.  *Id.* at 4-5.  Meanwhile, Officer Daniel began "pulling down [Plaintiff's] clothes."  *Id.*  Before Plaintiff lost consciousness from lack of air, Officer Smith released him.  [doc. # 1, pp. 5-6].

Without reading Plaintiff his *Miranda* rights or informing him of the crime with which he was charged, officers placed Plaintiff in a patrol car.  *Id.*  There, Officer Gilbert choked him and punched him in the face three times.  [doc. # 9, p. 2].  An officer searched Plaintiff's underwear, and Plaintiff alleges that "it felt like someone tried to go in [his] buttock . . . ."  *Id.*  When the officers ceased, "people . . . in the store parking lot" recorded him as he struggled to pull his shorts up.  *Id.*

When he arrived at the police station, Officers Daniel, Smith, Epennet, and Vail asked him "to remove the drugs" and Plaintiff responded that he "didn't have any drugs . . . ."  *Id.*  The officers slammed him to the floor while he was in handcuffs.  *Id.*  He was facing the floor and felt a blow to his face.  *Id.*  One or more of the officers pulled his shorts down and shoved "their fingers" in his "anus real hard" multiple times.  *Id.*  "They" cut off his underwear and transported him to E.A. Conway Hospital because his body and anus hurt.  *Id.*

2

A nurse had to "dig" the handcuffs out of Plaintiff's skin. *Id.* at 3. The handcuffs were "so tight" that they scarred and injured Plaintiff's wrists and hands. *Id.*

Plaintiff claims that the nurses did not examine his testicles or anus even though he "told them about it . . . ." *Id.* They "sprayed something on [his] left wrist and [his] left elbow" and placed a band-aid on his left wrist and left elbow. *Id.* Plaintiff claims that the nurses did "nothing for [his] right wrist [and] left knee . . . ." *Id.*

Someone later transported Plaintiff to a patrol car in a wheelchair. *Id.* Plaintiff claims, essentially, that Officer Daniel forced him to stand and enter the patrol car without assistance, causing Plaintiff pain. *Id.*

Officers transported Plaintiff to OCC. *Id.* While confined, Plaintiff "was dehydrated [and] was knocking on the flap for water . . . ." *Id.* "[T]hey finally gave [him] some water hours later." *Id*

Plaintiff requested care for his anus from a nurse, but the nurse informed him that he must "fill out a sick call." *Id.*

Plaintiff went to Detective Murphy's office. *Id.* There, Detective Murphy threatened to charge Plaintiff with filing a false police report if he tried to "press charges . . . ." *Id.*

Plaintiff completed a "sick call because [his] anus was still hurting" and bleeding. *Id.* at 4. He claims: "after three weeks I didn't receive any medicine for my anus or my wrist . . . ." *Id.* He seems to allege that he later received care for his wrist, but he "was told to fill out another sick call" to receive care for his anus. *Id.* He completed a second request for care, but "they" refused to treat him. *Id.* "They" informed him that "this is fraudulent" and that he should "address this with Det. Murphy." *Id.* Detective Murphy agreed that "this is fraudulent." *Id.* Attempting to obtain care, Plaintiff completed a grievance; however, "nothing happened." *Id.*

Plaintiff was charged with four counts of resisting an officer, possession of a controlled dangerous substance, obstruction of justice/simple assault, introducing contraband into a penal institution, possession of drug paraphernalia, and possession of marijuana. *Id.* at 5. His charges for resisting an officer and possession of a controlled dangerous substance remain pending, but the other charges were dismissed. *Id.*

Plaintiff maintains that, following his arrest, he lost his job, he missed the birth of his daughters, he lost his relationship, and he "hurt[s] mentally, emotionally, and physically . . . ." *Id.* at 4. He seeks compensation from Detective Murphy for refusing to arrange medical care, from E.A. Conway Hospital, from OCC Medical Staff, and from the officers who allegedly utilized excessive force, conducted illegal searches, and touched Plaintiff's genitalia and anus. *Id.* at 4-5. He also seeks compensation for each day he was in jail and for losing his job. *Id.* at 4. He asks the Court to "press charges" against the arresting officers and to terminate the employment of Detective Murphy and the arresting officers. *Id.* at 4.

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2]  See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b)

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the

allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. *Heck v. Humphrey* and *Wallace v. Kato***

Plaintiff claims:

° that officers lacked reasonable suspicion to justify stopping him;

° that Officer Daniel conducted an unlawful search when Daniel reached into Plaintiff's underwear and touched his testicles;

6

° that Officer Smith choked him;

° that, thereafter, Officer Daniel again searched him unlawfully when he began "pulling down [Plaintiff's] clothes";

° that, after officers placed Plaintiff in a patrol car, Officer Gilbert choked him and punched him in the face three times;

° that an officer searched Plaintiff's underwear;

° that, when he arrived at the police station, Officers Daniel, Smith, Epennet, and Vail slammed him to the floor while he was in handcuffs and struck him in the face; and

° that one or more of the officers pulled his shorts down and shoved "their fingers" in his "anus real hard" multiple times.

Plaintiff was charged with four counts of resisting an officer, possession of a schedule II controlled dangerous substance, obstruction of justice/simple assault, introducing contraband into a penal institution, possession of drug paraphernalia, and possession of marijuana. *Id.* at 5. His charges for resisting an officer and possession of a Schedule II controlled dangerous substance remain pending, but the other charges were dismissed. *Id.*

If Plaintiff is convicted of the pending charges, he may not be entitled to seek relief for the claims above until the convictions are reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. See *Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that a successful civil rights action that would necessarily imply the invalidity of the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus).

While the rule in *Heck* does not extend to pending criminal matters, successful Section 1983 claims, under Plaintiff's allegations, could necessarily imply the invalidity of any future

conviction for resisting an officer or possession of a Schedule II controlled dangerous substance.[3]  See *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges).

Prevailing on the unlawful stop claim could necessarily imply the invalidity of a future conviction.  Such claims are predicated on a lack of reasonable suspicion and necessarily constitute collateral attacks on a conviction if the conviction is founded on evidence derived from the officer's reasonable suspicion and subsequent stop.  See *Jackson v. Vannoy*, 49 F.3d 175, 176 (5th Cir. 1995) (applying *Heck* to an unlawful vehicle stop clam); *Wallace v. Kato*, 549 U.S. 384, n.5 (2007) ("[A] Fourth Amendment claim can necessarily imply the invalidity of a conviction . . . .") *Agard v. Sanders*, 2006 WL 2128079, at *3 (N.D. Tex. July 31, 2006) (finding that the plaintiff's unlawful traffic stop claim would, if proved, implicate the validity of his guilty plea because the evidence discovered following the stop would be subject to suppression).[4]

Prevailing on the unlawful search claims against Officer Daniel, Officer Smith, Officer Epennet, and Officer Vail could necessarily imply the invalidity of a future conviction.   Plaintiff maintains that the officers did not find any drugs following the unlawful searches; that said,

---

[3] A successful claim will not necessarily imply the invalidity of a conviction "if the factual basis for the conviction is temporally and conceptually distinct from" the claim.  *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

[4] See also *Handshaw v. Hilliard*, 2015 WL 5177623, at *4 (S.D. Miss. Sept. 4, 2015) (finding a false arrest claim "*Heck* barred" and reasoning that "if Defendants' stop of Plaintiff, the occurrences surrounding his being taken into custody, and the subsequent search incidental to arrest [which revealed the drugs that were essential to the criminal charge] were determined unconstitutional . . . , such a holding would cast into doubt or potentially invalidate Plaintiff's drug possession charge."); *Lister v. Perdue*, 2015 WL 864834, at *1 (N.D. Tex. Feb. 27, 2015); *Scallion v. Red River Par.*, 2006 WL 2524159, at *2 (W.D. La. Aug. 25, 2006).

Plaintiff is charged with possession of a Schedule II controlled dangerous substance.  Plaintiff's unlawful search claims are predicated on the absence of probable cause and, therefore, would constitute collateral attacks on any future conviction founded on evidence derived from the searches.[5]  See *Hall v. Lorenz*, 48 F. App'x 481 (5th Cir. 2002) ("Hall's claims regarding his allegedly illegal arrest and illegal search and seizure, if successful, would undermine the validity of his felony drug conviction."); *Kato*, 549 U.S. at n.5 ("[A] Fourth Amendment claim can necessarily imply the invalidity of a conviction . . . .").

Prevailing on the claims that Officer Smith choked him, that Officer Gilbert choked him and punched him the face three times, and that Officers Daniel, Smith, Epennet, and Vail slammed him to the floor and struck him in the face could necessarily imply the invalidity of a future conviction for resisting an officer.  Plaintiff maintains that he did not resist the officers.  If, for example, he prevails on his excessive force claims and establishes that the officer's uses of force were excessive because he did not resist, he will have established that his convictions for resisting an officer are invalid.  *Arnold v. Town of Slaughter*, 100 F. App'x 321, 325 (5th Cir. 2004) (finding, where a plaintiff alleged that he did nothing wrong and was viciously attacked for no reason, that the claim was barred because it squarely challenged the factual determination

---

[5] While "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial . . . [b]ecause of doctrines like independent source[,] inevitable discovery, and [] harmless error," Plaintiff's allegations do not, at present, suggest that any of these doctrines would, following a finding by this Court that the officers lacked probable cause, validate Plaintiff's conviction.  See *Heck*, 512 U.S. at n.7 (alterations to original and cited sources omitted); see also *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996) ("If proved, however, [the plaintiff's] false arrest claim necessarily would call into question his conviction as a felon in possession of a firearm. Specifically, if the arresting officers lacked probable cause to arrest Hudson for burglary and the arrest is invalid, the firearm discovered in Hudson's possession as a result of the arrest would be subject to suppression under the Fourth Amendment as the 'fruit' of an illegal arrest. Moreover, it is improbable that doctrines such as independent source, inevitable discovery and harmless error would permit the introduction of the firearm as evidence in this case . . . .").

that underlay his conviction for resisting an officer); *Ducksworth v. Rook*, 647 F. App'x 383, 386 (5th Cir. 2016) (finding, where the plaintiff was convicted of resisting arrest, disorderly conduct, and assault on a police officer, that the plaintiff's excessive force claims were barred under *Heck* because "[h]is complaint present[ed] a single narrative of an unprovoked police attack; his 'broad claims of innocence relate[d] to the entire arrest encounter, and not merely a discrete part of it.'" (quoting *Daigre v. City of Waveland, Miss.*, 549 F. App'x 283, 287 (5th Cir. 2013)).

Finally, prevailing on the false arrest claim could necessarily imply the invalidity of a conviction because "false arrest . . . claims challenge the existence of probable cause and, thus, by their essence are collateral attacks on a criminal judgment's validity." *Thomas v. Pohlmann*, 681 F. App'x 401, 406 (5th Cir. 2017) (citing *Cormier v. Lafayette City-Par. Consol. Gov't*, 493 Fed. App'x. 578, 583 (5th Cir. 2012)); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("[The plaintiff's] proof to establish his false arrest claim, i.e., that there was no probable cause to arrest [for the crime he was convicted of], would demonstrate the invalidity of [the conviction].").[6]

Federal courts may stay civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the allegedly improper state prosecution concludes. See *Kato*, 549 U.S. at 393-94 ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim *related to* rulings that will likely be made in a pending or anticipated criminal

---

[6] See also *Queen v. Purser*, 109 Fed. App'x. 659 (5th Cir. 2004) (a former inmate's false arrest claim necessarily challenged whether the evidence, which an officer seized following an allegedly illegal stop, and which led to his subsequent conviction, supplied probable cause for his arrest; thus, the claim was not cognizable absent a showing that the conviction had been invalidated); *Chande v. Moore*, 606 F. App'x 238, 239 (5th Cir. 2015) ("Because a showing that there was no probable cause for the challenged entry, search, seizure, and arrest would call into question the validity of [plaintiff's] resulting conviction for unlawful possession of a controlled substance with intent to deliver in a drug-free zone," the plaintiff's claims were barred by *Heck*); *Goldston v. City of Monroe ex rel. Monroe Police Dep't*, 621 F. App'x 274 (5th Cir. 2015).

trial), it is within the power of the district court . . . to stay the civil action until the criminal case . . . is ended.") (emphasis supplied).

Here, Plaintiff's claims are *related to* rulings that will likely be made concerning his pending charges. Accordingly, the Court should stay these claims pending the outcome of the ongoing criminal prosecution.

### 3. Failure to Read *Miranda* Rights

Plaintiff claims that officers did not read him his rights under *Miranda v. Arizona*, 384 U.S. 436, 439 (1966). The officers' alleged failure to read *Miranda* warnings, however, did not violate Plaintiff's constitutional rights and "cannot be grounds for a § 1983 action." *Chavez v. Martinez*, 538 U.S. 760, 772 (2003); see *Foster v. Carroll Cty.*, 502 F. App'x 356, 358 (5th Cir. 2012). The Court should dismiss this claim.

### 4. Failure to Apprise Plaintiff of the Nature of the Charges

Plaintiff claims that the arresting officers failed to inform him of the charges for which they were arresting him. Under the Sixth Amendment, "the accused shall enjoy the right to . . . be informed of the nature and cause of the accusation . . . ." U.S. CONST. AMEND. VI. However, "A defendant's right to be informed of the nature and cause of an accusation brought against him does not exist until the Government is committed to a prosecution." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) (citing *Kladis v. Brezek,* 823 F.2d 1014, 1018 (7th Cir. 1987)).

In *Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (quoted sources omitted), the Court opined: "The initiation of judicial criminal proceedings . . . is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society,

and immersed in the intricacies of substantive and procedural criminal law.  It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable."

Most relevant here, an arrest does not constitute a "criminal prosecution" under the Sixth Amendment.  In *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 220 (2008) (quoting 4 W. Blackstone, Commentaries), the Court agreed that "prosecution" means "the manner of an offender's 'formal accusation.'"  "The modifier 'formal' is significant because it distinguishes 'prosecution' from earlier stages of the process involving a different kind of accusation: *the allegation of criminal conduct necessary to justify arrest and detention*."  *Id.* (emphasis added). "[T]he accusation justifying arrest and detention [is] clearly preliminary to the 'formal accusation' . . . ."  *Id.*

The Court further opined in *Rothgery* that "'criminal prosecutio[n]' in the Sixth Amendment refers to the commencement of a criminal suit by filing formal charges in a court with jurisdiction to try and punish the defendant."  *Id.* at 223.  In *Rothgery*, the "petitioner's initial appearance before the magistrate did not commence a 'criminal prosecutio[n]'" because "[n]o formal charges had been filed."  *Id.*  Rather, "The only document submitted to the magistrate was the arresting officer's affidavit of probable cause[,]" which "clearly was not . . . the commencement of a criminal 'prosecution.'"  *Id.* at 224.  "Rather, it was the preliminary accusation necessary to justify arrest and detention—stages of the criminal process . . . before prosecution.  The affidavit was not a pleading that instituted a criminal prosecution, such as an indictment, presentment, or information . . . ."  *Id.*; see also *Kirby*, 406 U.S. at 698 (Brennan, J., dissenting) (acknowledging that the plurality concluded that an arrest "does not face the accused 'with the prosecutiorial [sic] forces of organized society,' nor immerse him 'in the intricacies of

12

substantive and procedural criminal law.'"); *United States v. Gouveia*, 467 U.S. 180, 190 (1984) (observing that the Court has "never held that the right to counsel [under the Sixth Amendment] attaches at the time of arrest." (modification to original).

Here, because an arrest does not constitute a "criminal prosecution" under the Sixth Amendment, Plaintiff's right to be informed of the nature and cause of the accusations against him did not yet exist.

Moreover, to the extent Plaintiff invokes the Fourth Amendment, it "requires only that the police have probable cause to believe that an individual has broken the law before arresting him or her." *Kladis*, 823 F.2d at 1018. Thus, the Fourth Amendment affords Plaintiff no recourse for this particular claim.

Accordingly, the Court should dismiss this claim.

**5. E.A. Conway Hospital**

Plaintiff claims that nurses at E.A. Conway Hospital ("the hospital") did not examine his testicles or anus even though he "told them about it . . . ." *Id.* They "sprayed something on [his] left wrist and [his] left elbow" and placed a band-aid on his left wrist and left elbow, but they did "nothing for [his] right wrist [and] left knee . . . ." *Id.*

Plaintiff, however, explicitly seeks relief only from E.A. Conway Hospital, and he does not allege that the hospital—rather than the nurses—violated his constitutional rights.[7]  [doc. # 9, p. 5].  "A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the

---

[7] The undersigned specifically instructed Plaintiff to provide "the name of each person (or entity) who allegedly violated his constitutional rights" and to "provide a separate description of what, exactly, each defendant did to violate his rights[.]"  [doc. # 8, p. 3].

deprivation.'" *Jones v. Lowndes Cty., Miss.,* 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James v. Tex. Collin Cnty.,* 535 F.3d 365, 373 (5th Cir. 2008)).

It appears Plaintiff seeks to hold the hospital vicariously liable for the nurses' alleged actions. However, "a defendant cannot be held liable under § 1983 on a theory of vicarious liability, including *respondeat superior*." *Hallcy v. Paxton*, 773 F. App'x 209, 210 (5th Cir. 2019).

To the extent Plaintiff maintains that the hospital is a body of local government which employed the nurses,[8] he does not allege that the hospital maintained a custom, policy, or practice of refusing to treat injuries for which patients request care.[9] See *Jones*, 678 F.3d at 349 (quoting *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 690-91 (1978)) ("If the defendant is a municipality or other body of local government, the alleged deprivation must be connected to 'a governmental custom,' 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers.'").

Accordingly, the Court should dismiss this claim.

### 6. Monroe Police Department

Plaintiff names Monroe Police Department as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of

---

[8] The undersigned does not opine on whether the nurses or the hospital are state actors.

[9] To the extent the hospital is a state actor, and to the extent it is not a body of local government, it is both immune under the Eleventh Amendment and not a "person" under Section 1983. See LA. REV. STAT. § 40:2002.7 (E.A. Conway Memorial Hospital in Monroe, Louisiana is under the Department of Health and is a "state operated general hospital . . . ."); see also *Darlak v. Bobear*, 814 F.2d 1055, 1059 (5th Cir. 1987) (The Eleventh Amendment bars suits in federal court for money damages and injunctive relief filed by citizens of a state against their own state or state agency); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989) (states and "arms of the state" are not "persons" under Section 1983).

the state where the court is located . . . ."  Under Louisiana law, an entity must qualify as a "juridical person," which is an "entity to which the law attributes personality, such as a corporation or a partnership."  LA. CIV. CODE art. 24.

Here, Monroe Police Department does not qualify as a juridical person.  See *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002) ("[A] sheriff's office is not a legal entity capable of being sued . . . ."); *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988); *Liberty Mutual Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So. 2d 236 (La. Ct. App. 1977).  Accordingly, the Court should dismiss Plaintiff's claims against Monroe Police Department.

**7. Termination of Employment**

Plaintiff asks the Court to terminate the employment of Detective Murphy and the arresting officers.  [doc. # 9, p. 4].  The Court, however, lacks authority to grant Plaintiff's request.[10]

Federal courts are not personnel directors.  See *Hurrey v. Unknown TDCJ Corr. Officer A*, 2009 WL 3645638, at *2 (N.D. Tex. Nov. 4, 2009).  Moreover, Plaintiff's request sounds in mandamus as he essentially asks the Court to, by writ, compel the non-federal official (or entity) with the authority to terminate these defendants' employment to perform his or her duties.  In this respect, the Court lacks jurisdiction.[11]  See  *Samuels v. Emanuel*, 2014 WL 50851, at *2

---

[10] Under LA. REV. STAT. § 33:2500, "the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant . . . ."  "'Appointing authority' means any official, officer, board, commission, council, or person having the power to make appointments to positions in the municipal fire and police services."  LA. REV. STAT. § 33:2473.

[11] "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee *of the United States* or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361 (emphasis added).

(W.D. La. Jan. 7, 2014) (reasoning, where the plaintiff asked "that the defendants be relieved from their duties[,]" that "federal district court lacks jurisdiction to review actions in the nature of mandamus, seeking to compel state officials to perform duties allegedly owed the plaintiff, as for example in this case . . . .").

Accordingly, the Court should deny this request for relief.

**8. Request to "Press Charges"**

Plaintiff asks the Court to "press charges" against the arresting officers. [doc. # 9, p. 4]. There is no constitutional right to have a person criminally prosecuted. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).[12] Moreover, investigating and prosecuting possible criminal activities lies in the exclusive jurisdiction of the executive branch of government. In the federal context, for example, prosecuting criminal actions lies in the discretion of the Attorney General of the United States and duly authorized United States Attorneys. In Louisiana, prosecuting criminal actions lies in the discretion of the Louisiana Attorney General and the various District Attorneys. See LA. CODE. CRIM. PROC. arts. 61 and 62. Here, to the extent Plaintiff demands that the Court charge these defendants with crimes, the Court should deny his request.[13]

---

[12] See *U.S. v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

[13] Plaintiff should, if he wishes, direct his concerns to a local, state, or federal police agency. That said, Plaintiff should be aware that, if a prosecuting authority investigates and chooses to forego filing charges, "[t]he decision to file or not file criminal charges . . . will not give rise to section 1983 liability." *Oliver*, 904 F.2d at 281. The courts "allow the government discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek." *U.S. v. Lawrence*, 179 F.3d 343, 348 (5th Cir. 1999); see, e.g. *Hymel v. Champagne*, 2007 WL 1030207, *2 (E.D. La. 2007) (denying a plaintiff's request to investigate a correctional center: "this Court has no authority to issue such an order and plaintiff has no constitutional right to such an order. Moreover, to the extent that plaintiff is alleging that a

**9. Limitation on Recovery Under 42 U.S.C. § 1997e(e)**

Following his discharge from the hospital, someone transported Plaintiff to a patrol car in a wheelchair.  [doc. # 9, p. 3].  Then, Officer Daniel—apparently maliciously—forced him to stand and enter the patrol car without assistance.  The wheelchair was close enough to the vehicle that Plaintiff "was able to grab the door" for support and was eventually able to enter the vehicle.  *Id.*  Plaintiff suffered "pain."  *Id.*

Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury."  *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

Here, Plaintiff does not allege that he suffered a more-than-de-minimis physical injury— or any other injury compensable by monetary relief—because of Daniel's actions.[14]  He does allege that he suffered pain but, without more, this injury is de minimis.  See *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that the "physical injury required by § 1997e(e) must be more than de minimus [sic], but need not be significant."); *Herron v. Patrolman No. 1*,

---

criminal investigation should be instituted, such investigations are solely within the purview of law enforcement authorities.").

[14] As above, Plaintiff's requests to "press charges" against defendants and to terminate their employment are not cognizable.  Moreover, while Plaintiff alleges that he lost his job, he does not claim that being forced to stand and enter the patrol car while injured caused him to lose his job.

111 F. App'x 710, 713 (5th Cir. 2004) (holding that a "temporary increase of pain . . . is at most a *de minimis* injury that will not support a claim of mental or emotional suffering.").

As Plaintiff seeks only compensatory relief for mental, emotional, and de minimis physical injuries, the Court should dismiss this claim.

**10. Conditions of Confinement**

Plaintiff claims that, at OCC, he "was dehydrated [and] was knocking on the flap for water[,]" but "they" waited hours to provide water.  [doc. # 9, p. 3].

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. To reiterate, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Here, Plaintiff does not specify who "they" are.  As he does not identify a responsible defendant, the Court should dismiss this claim.

**11. Medical Care**

Plaintiff raises several related claims concerning inadequate medical care at OCC.  A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)).  A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care

claim).  A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference."  *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016).  "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.  Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet."  *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff first claims that he requested care for his anus from a nurse, but the nurse informed him that he must "fill out a sick call."  [doc. # 9, p. 3].  Plaintiff completed a "sick call because [his] anus was still hurting" and bleeding.  *Id.* at 4.  These allegations do not plausibly bespeak deliberate indifference to a substantial risk of serious harm.  The nurse did not ignore or refuse to treat Plaintiff; rather, the nurse simply instructed Plaintiff to request care through another channel, and Plaintiff does not describe any injuries which, prior to the delay between submitting a request for care and receiving care, presented a substantial threat of serious harm.

See, e.g., *Alexander v. Texas Dep't of Criminal Justice*, 2017 WL 5749548, at *3 (S.D. Tex. Nov. 28, 2017) ("Alexander's allegation that a nurse practitioner told him to submit a sick call request to see a physician about his need for pain medication does not establish that he was denied care with the requisite deliberate indifference . . . ."); *Chaisson v. Grounds*, 2014 WL 175329, at *4 (E.D. Tex. Jan. 14, 2014); *Mora v. Chapa*, 2013 WL 4590458, at *11 (S.D. Tex. Aug. 27, 2013).

Next, Plaintiff claims: "after three weeks I didn't receive any medicine for my anus or my wrist . . . ." *Id.* He seems to allege that he later received care for his wrist, but he "was told to fill out another sick call" to obtain care for the former injury. *Id.* He completed a second request for care, but "they" refused to treat him. *Id.* "They" informed him that "this is fraudulent" and that he should "address this with Det. Murphy." *Id.*

Again, however, Plaintiff fails to identify who "they" are or to otherwise identify a responsible defendant. He does seek relief from OCC Medical, but OCC Medical is unamenable to suit. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. OCC Medical does not qualify as a juridical person. See *Henderson v. Mid States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . ."). Accordingly, the Court should dismiss Plaintiff's claims against OCC Medical.

Finally, Plaintiff claims that Detective Murphy agreed with others in OCC Medical that Plaintiff's second sick call request was fraudulent. [doc. # 9, p. 4]. Plaintiff, however, does not

allege that he sought care from Detective Murphy, that he asked Murphy to relay his requests for care to another who could provide care, that Murphy instructed medical professionals to refuse Plaintiff care, or that the medical professionals refused care because Murphy concurred with their judgment. Rather, Plaintiff alleges that individuals in OCC Medical refused care, that "they" instructed him to "fill out another sick call," that he did fill out another sick call, that they responded and "said this is fraudulent," and that, when Plaintiff replied, "they responded saying they address[ed] this with Det. Murphy and he said this is fraudulent . . . ." *Id.* In other words, Plaintiff alleges that unidentified medical professionals deemed his request for care "fraudulent" and that the unidentified medical professionals told Plaintiff that Detective Murphy concurred. Plaintiff does not plausibly allege that Detective Murphy was deliberately indifferent. See *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) ("Deliberate indifference is an extremely high standard to meet.").

Accordingly, the Court should dismiss these claims.

## 12. Threats

Plaintiff claims that Detective Murphy threatened to charge him with filing a false police report if he tried to "press charges . . . ." Verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). Allegations of mere verbal abuse simply do not give rise to a cause of action under Section 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *Siglar*, 112 F.3d at 191. Because Plaintiff does not state a claim of constitutional dimension, the Court should dismiss this claim.

## <u>Recommendation</u>

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Ja'Michael

Shawndarrious Carter's excessive force claims, unlawful stop claim, and unlawful search claims against Defendants Daniel, Smith, Gilbert, Epennet, and Vail be **STAYED** under the following conditions:

> a. If Plaintiff intends to proceed with these claims, he must, within thirty (30) days of the date the criminal proceedings against him conclude, file a motion to lift the stay;

> b. If the stay is lifted and the Court finds that Plaintiff's claims would impugn the validity of his conviction, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed absent some other bar to suit;

> c. Plaintiff should not file any more documents concerning these particular claims (other than an objection to this Report and Recommendation if he so chooses) in this action until the state court proceedings conclude; and

> d. Defendants shall not be required to answer these particular claims during the stay, and Plaintiff may not seek a default judgment or conduct any discovery during the stay.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims and requests for relief be **DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the**

legal conclusions accepted by the District Court, except upon grounds of plain error.  *See*

*Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

    In Chambers, Monroe, Louisiana, this 29th day of October, 2019.

_____
Karen L. Hayes
United States Magistrate Judge